IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALBERT KIRKMAN | ) | |
| | ) | |
| Petitioner, | ) | Case No. 14 CV 2398 |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL LEMKE, Warden, | ) | |
| | ) | Hon. Judge Thomas Durkin, Presiding |
| Respondent. | ) | |

**PETITIONER'S REPLY IN SUPPORT OF HIS
PETITION FOR A WRIT OF HABEAS CORPUS**

NOW COMES Petitioner Albert Kirkman, by and through his counsel THE EXONERATION PROJECT at the University of Chicago Law School, and hereby replies in support of his April 3, 2014 petition for a writ of habeas corpus as follows.[1]

**Introduction**

Albert Kirkman's habeas petition is based on an inescapable fact: the witness upon whom his conviction is based, Willie Johnson, lied at least once, under oath, in describing the shooting for which Albert Kirkman was convicted. Johnson testified years after that trial that his trial testimony, the only evidence against Kirkman, was a lie. He identified the true perpetrators of this crime and credibly explained why he lied at Kirkman's trial. Other witnesses corroborate both the falsity of Johnson's testimony and the veracity of his new account.

---

[1] Since the filing of his original petition for a writ of habeas corpus, Petitioner has been transferred to Danville Correctional Center where Victor Calloway is the warden. Mr. Calloway should be substituted as the appropriate Respondent in this litigation.

Exhibit A

The state trial court made unreasonable findings of fact in denying Kirkman state post-conviction relief, unreasonably concluding that Johnson's recanted testimony was false. Its determination was not based on Johnson's mannerisms, appearance, or other subjective factors to which reviewing courts should give deference, but rather on blatantly incorrect conclusions about the substance of Johnson's testimony – the state trial court's decision was based on an incorrect understanding of what Willie Johnson's recanted testimony actually said. This unreasonable decision based on a manifestly erroneous credibility determination went unchallenged by the Illinois courts, which led to Mr. Kirkman seeking the review of the federal courts to vindicate his federal constitutional rights. He is entitled to relief both because he has demonstrated his actual innocence, and because his conviction and its reliance on perjured and unreliable testimony violates his right to due process.

Respondent's brief in opposition to Mr. Kirkman's petition does not raise any issues that Petitioner's memorandum of law did not already raise and address in his opening brief. Respondent contends that Mr. Kirkman's due process claim was procedurally defaulted, and that any new information about Johnson's testimony is irrelevant for that consideration. Respondent also argues that there is no federal actual innocence claim, that even if there was, it was not clearly established as required under 28 U.S.C. § 2254(d)(1), and that in any event Mr. Kirkman has not demonstrated by clear and convincing evidence that the state court's conclusion Johnson's recantation was false was incorrect.

Petitioner addressed each and every one of these arguments in his memorandum of law, and nothing the Respondent has raised or argued should prevent this Court from granting Kirkman habeas relief. The state court's factual findings about Willie Johnson's testimony were unreasonable. Kirkman did not procedurally default his due process claim (which Respondent's

brief misapprehends as only a sufficiency of the evidence claim), and even if he did, he satisfies the requirements for this Court to overlook any procedural default. The state court unreasonably rejected Albert Kirkman's claim that it violates his right to due process to stand convicted of murder based on the perjured and unreliable evidence in this case.

## ARGUMENT

I. **THE STATE COURT'S FACTUAL FINDINGS WRE UNREASONABLE AND ITS CREDIBITLIY DETERMINATIONS, BY CLEAR AND CONVINCING EVIDENCE, WERE WRONG**

This habeas petition is, at its heart, about the facts, and about the state trial court's unreasonable factual findings in rejecting Willie Johnson's credible and consistent recantation. It follows, then, that Respondent's main opposition to this petition lies in an effort to preserve those unreasonable factual findings. Respondent contends that the state court's determination that Willie Johnson's recantation testimony was incredible is "beyond debate" and that the state court at least reasonably determined the recantation was "not believable." (Resp. at 16.) Respondent's analysis of § 2254(d)(2) and § 2254(e)(1) is wrong, as is his conclusion that the state court's analysis was reasonable.

First, these statutes do not place Johnson's credibility "beyond debate" – instead, Mr. Kirkman to show by clear and convincing evidence that credibility findings by the state court were wrong. 28 U.S.C. § 2254(e)(1) This is a deferential standard but hardly "beyond debate." Instead, deference "is demanding but not insatiable," *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013); *see also Miller-El v. Dretke,* 545 U.S. 231, 240 (2005), and must be predicated on a finding that the state courts' reasoning is sound and supported by the record. Indeed, as the Seventh Circuit has reflected, "[i]n passing section 2254(d)(2), Congress has reminded…. [habeas courts] that… [they] may no more uphold [an unreasonable] factual determination than…set aside reasonable state-court fact-finding." *Carlson*, 526 F.3d at 1024 (internal citation omitted). To be reasonable,

3

inferences must find "at least some support in the facts." *McFowler v. Jaimet*, 349 F.3d 436, 451–52 (7th Cir. 2003). An unreasonable inference, then, is one that is untethered from the factual record. *See United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986) ("mere suspicion or speculation cannot be the basis for creation of logical inferences"), *amended in other respects*, 798 F.3d (1250 (9th Cir. 1986).

Petitioner's supporting memorandum of law explained, at length, why the factual determinations made by the state court were unreasonable and unsupported by the record (Dckt. 41 at 26-34) and he will not simply re-type those arguments here, but Respondents' brief makes two additional arguments worth mentioning. First, Respondent describes Willie Johnson's original identification of Mr. Kirkman as a "dying declaration" particularly worthy of credit. (Resp. at 16.) The record, by clear and convincing evidence, does not support a conclusion that Johnson believed he was dying at the time he identified Mr. Kirkman and Mr. Cal as his shooters – in fact, Johnson denied that belief and explained that he falsely named these men because he was afraid of the real perpetrator:

> Q: Did you tell those police officers then it was Mr. Kirkman and Mr. Cal that had shot you?
>
> A: I did.
>
> Q: Why did you do that?
>
> A: Well, for one, I just got shot up and my guys had just got killed and **I didn't know if I was going to die or not** and on top of that my mother had already started receiving silent calls and guys was following my mother around and my sister was being threatened, you know, and there wasn't much I could do for my sister and everything like that, so **for the most part the things I said I said out of fear** you know, for my life and as well as my sister's and my mother.
>
> Q: Who were you afraid of, Mr. Johnson?
>
> A: Keith Ford.
>
> …
>
> Q: Why did you give false testimony against… [Cal and Kirkman] at their criminal trial?

4

> A: Again, you know, I was fearful of my life.

Dckt. No. 46, Respondent's Ex. Z at L33 (emphasis added).

> ...
>
> Q: Do you remember making the statement identifying Kirkman and Cal as the persons that shot you a second time at the hospital to Detective Miller?
>
> A: Yes, because by this time Mr. Keith Ford was adamant about what he would do to my people if I implicated him in any way, type of way, shape, form or fashion.

*Id.* at L53.

A dying declaration must be spoken by a person "without hope of recovery and in the shadow of impending death." *Shepard v. United States*, 290 U.S. 96, 99-100 (1933). Willie Johnson, who was reflecting the possibility he might die, was not in such a shadow. *See id.* ("Fear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be a settled hopeless expectation that death is near at hand and what is said must have been spoken in the hush of its impending presence.") Moreover, Mr. Johnson described his own condition even right after the shooting as coherent and communicative – he spoke to family members, sought help for other victims, and was asked by paramedics if he could walk himself to the ambulance. Dckt. No. 46, Respondent's Exhibit B at B57.) If this was his condition at the time of the actual shooting, it is hard to imagine him facing "swift and certain doom" at the hospital after receiving stabilizing care to be able to talk with police.

Second, Willie Johnson's recantation was not "internally inconsistent" as Respondent suggests. The main source of purported "inconsistency" the state trial court identified was the issue of how many shooters had committed this crime. Specifically, the trial court determined that Johnson had testified that this crime involved only a single shooter when all prior testimony and ballistics evidence reflected two perpetrators. (Dckt. No. 46, Respondent's Ex. Z at S4-S5.) While this might have been a critical inconsistency had Mr. Johnson, in fact, been unclear about such

5

an important detail, in fact Mr. Johnson's recantation testimony consistently described the crime as involving two shooters nearly 20 times. *See, e.g.,*:

> Q: At some point did anyone else arrive at that address?
>
> A: Yes, ma'am.
>
> Q: How did – how many other people arrived?
>
> A: **Two**.
>
> Q: How did they arrive?
>
> A: With guns…I turned around and **I seen them they** was just coming to an aiming position at myself and my associates.

*Id.* at L26.

> Q: And who were **the two** – were **the two individuals that were shooting at you the two people who you described** coming up to the property?
>
> A: **Yes**, ma'am. **They** was coming up to the property.

*Id.* at L27.

> Q: How close were **the two men** to you when you were being shot?
>
> A: About two feet. About two feet.
>
> Q: Did you have an opportunity to see the faces of those **two men**?
>
> A: I did.

*Id.* at L28.

> Q: Did you recognize **the two men that were shooting at you**?
>
> A: I recognized **both men** but I didn't know one of them. One of them I didn't know but I recognized both of the men, meaning **I seen both of them** but I could point out one to as far as saying I know him…

*Id.* at L28.

> Q: The **other man that was shooting at you**, not Mr. Ford, you said you recognized him but you didn't know his name, is that correct?
>
> A: Right.

6

*Id.* at L29.

> Q: Mr. Johnson, what happened after you were shot?
>
> A: I sit back, I watched the **two gentlemen that was shooting** walked away…

*Id.* at L30.

> Q: And you had a conversation with the officers and…[t]hey asked you who shot you and you told them it was **Duke and another guy** whose name you didn't know or whose name you didn't say…
>
> A: They came to me with two pictures…
>
> Q: And at that time, then, you agreed those were the **two guys** that shot you?
>
> A: I did.

*Id.* at L49-L50 (emphasis added).

The record of Willie Johnson's recantation testimony and the court's ruling about it, as addressed in further detail in Mr. Kirkman's supporting memorandum of law, is not of a court who listened to Willie Johnson's testimony, assessed his credible, and made reasonable findings of fact and reasonable credibility determinations after hearing from him. Instead, it is a record of a judge who made wholesale errors, misunderstanding Mr. Johnson's testimony and mis-citing it in his opinion. These are errors by any measure, not mere disagreements with how the state court judge came down on the evidence. Mr. Kirkman has shown, by clear and convincing evidence, that the court's credibility findings were wrong and that his decision is based on unreasonable findings of fact.

## II.   ALBERT KIRKMAN IS ENTITLED TO HABEAS RELIEF ON HIS ACTUAL INNOCENCE AND DUE PROCESS CLAIMS

These unreasonable findings of fact raise not only the issue of Mr. Kirkman's actual innocence claim, but his additional claim that his conviction was a violation of his right to due process. Respondent contends not only that this due process claim is procedurally defaulted, which the record demonstrates it is not, but that this claim is an uncognizable claim only about

7

the sufficiency of the evidence for which Mr. Kirkman cannot receive relief. Both arguments are incorrect.

### A. Kirkman Did Not Procedurally Default This Claim

The State first claims that Kirkman has procedurally defaulted his due process claim. (Resp. at 8-9.) This argument is belied by the record.[2]

Kirkman raised his due process claim both to the Illinois Appellate Court and Illinois Supreme Court as required by 28 U28 U.S.C. § 2254(b). *See also McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (articulating square presentment requirement). Both briefs specifically cite *Jackson v. Virginia* and other federal due process precedent and argue that his right to due process was violated under the tenants of those cases whether the courts did or did not credit Willie Johnson's testimony at the evidentiary hearing. (Dckt. No. 39, Brief and Argument for Petitioner-Appellant in *People v. Kirkman*, Appeal No. 11-2362, at 51-53; Dckt. No. 44, Petition for Leave to Appeal in *People v. Kirkman*, Appeal No. 116491, at 18-19.) Respondent contends that Kirkman did not seek the right relief (he sought a new trial on both levels of appeal) he has not squarely presented such a claim, but he cites no law for the proposition that Kirkman's request for relief defaulted his claim, and indeed it didn't – he put the operative facts and controlling law before the state courts by describing the lower courts' errors, citing *Jackson* and other precedent, and arguing that his right to due process was violated. *See Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006) (a substantial similarity of fact and legal substance satisfies the requirement). Kirkman has presented and briefed his federal claims at all levels of the state courts, and thus his federal claims are not procedurally defaulted.

### B. Albert Kirkman's Actual Innocence and the Fundamental Unreliability of His Trial Proceedings Warrants Habeas Relief

---

[2] And in any event, Petitioner satisfies the actual innocence gateway to exempt him from the requirements of procedural default, as argued in his Memorandum of Law at pp. 36-39. (Dckt. No. 41.)

Albert Kirkman's claims for relief rest on two separate contentions – that he is actually innocent and that his right to due process has been violated by a conviction predicated on unreliable, recanted and perjured testimony. Respondent argues that a federal actual innocence claim does not exist, an argument Petitioner addressed at length in his opening memorandum. (Dckt. No. 41 at 39-43.) Respondent also argues that for purposes of Petitioner's due process claim, newly discovered evidence such as evidence from the post-conviction proceedings cannot be considered. (Resp. at 8.) (citing *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). In making this argument, Respondent misunderstands the nature of Petitioner's due process claim, and attempts to miscast it as a mere actual innocence claim under another name. To the contrary, Petitioner's due process claim is a claim that his trial was fundamentally unfair because it relied on perjured testimony from an unreliable source.

As Petitioner explained in his opening brief, Mr. Kirkman's continued conviction and incarceration on the basis of Willie Johnson's testimony violates due process whether or not the Court credits Mr. Johnson's evidentiary hearing testimony (although it should) and not just because the results of the evidentiary hearing demonstrate that the evidence against Mr. Kirkman at trial was insufficient. The results of the evidentiary hearing show that the only evidence otherwise sufficient to convict Mr. Kirkman, the testimony of Willie Johnson, came from a wholly unreliable source. That source is unreliable because he himself admitted that he committed perjury, and even if a court does not credit his self-admission of perjury, because the circuit court concluded that he had committed perjury at the evidentiary hearing itself. A conviction that has no support other than testimony which is false, or at least wholly unworthy of belief, is a conviction that violates the Due Process Clause of the Fourteenth Amendment because it reflects a fundamental flaw in the trial process. *See, e.g.*, *Jackson*, 443 U.S. at 316

9

("no person shall be made to suffer the onus of a criminal conviction except under sufficient proof"); *In re Winship*, 397 U.S. 358 (1970); *see also Sheffield v. U.S.*, 397 A.2d 963, 966-67 (D.C. Cir. 1979) (citing *Manson v. Braithwaite*, 432 U.S. 98 (1977) and noting the use of an unreliable identification process violates due process); *Ross v. Heyne*, 638 F.2d 979, 986 (7th Cir. 1980) (even inadvertent false testimony by a government witness violates due process); *Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003) ("when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only 'if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted" (citations omitted)). This claim is different from a claim based merely on the fact that perjury was used to obtain a conviction (as Respondent points out, such claims require evidence that the prosecution was aware of the perjury, *See Shasteen v. Saver*, 252 F.3d 929. 933 (7th Cir. 2001)) because such a claim is not about whether a conviction is based *solely* on inherently unreliable testimony, but rather whether perjury was involved in some way in the conviction. In Kirkman's case, perjured testimony is the *only* evidence that convicted him.

It is true that in *Herrera v. Collins*, the Supreme Court addressed whether a person facing execution could obtain relief by demonstrating their actual innocence. The petitioner in *Herrera* was not able to do so, obviating any determination of whether such a claim exists. 506 U.S. at 417-18. In differentiating a potential actual innocence claim in this context from other kinds of due process claims, the Court in *Herrera*, in *dicta*, commented that claims under *Jackson v. Virginia* assess the sufficiency of "record evidence" to the exclusion of newly-discovered evidence. *Id.* at 402 (citing *Jackson*, 443 U.S. at 319). Nothing in *Herrera* or *Jackson*, however, holds that when a trial is later to found to be based on wholly unreliable, and indeed perjured

testimony, a court cannot apply existing due process standards to correct the due process violation caused by a conviction resting on such evidence.

### III. IF THIS COURT DENIES ALBERT KIRKMAN'S PETITION, A COA IS APPROPRIATE

Finally, Respondent asks this Court to deny Albert Kirkman a Certificate of Appealability (Resp. at 22.) If this Court dismisses Mr. Kirkman's petition, it should grant Mr. Kirkman a Certificate of Appealability. A certificate of appealability is warranted when a petitioner has "made a substantial showing of the denial of a constitutional right," 28 U.S.C § 2253(c)(2), or, similarly, when "jurists of reason would find it debatable whether the petition states a valid claim." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Seventh Circuit has explained that "[m]any prisoners who seem likely to lose in the court of appeals nonetheless are entitled to certificates of appealability under the statutory standard; meritorious appeals are a subset of those in which a certificate should issue." *Thomas v. United States*, 328 F.3d 305, 308 (7th Cir. 2003). Therefore, a COA only "requires an overview of the claims in the habeas petition and a general assessment of their merits," as opposed to a "showing that the appeal will succeed." *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). Because Albert Kirkman has made at least a substantial showing of the denial of his constitutional rights on the claims raised in his petition, this Court should grant him a certificate of appealability if it denies his claims.

### Conclusion

For the foregoing reasons, and those described in Petitioner's Petition for Writ of Habeas Corpus and his memorandum of law in support of his petition (Dckt. Nos. 1 and 41), Petitioner Albert Kirkman respectfully requests that this court grant his petition, vacate his conviction, and order the state court to retry him within 60 days or release him. In the alternative, Petitioner

requests an evidentiary hearing before this court so that any additional factual record may be developed in order to determine *de novo* whether Petitioner's constitutional claims have merit.

                                                 Respectfully submitted,

                                                 /s/ Tara Thompson

                                               Jon Loevy
                                               Gayle Horn
                                               Tara Thompson
                                               The Exoneration Project
                                                 at University of Chicago Law School
                                               6020 S. University Avenue
                                               Chicago, IL  60637
                                               (312) 789-4955 (tel)
                                               (312) 588-7276 (fax)